**David P. Rossmiller, OSB No. 983395**
Email: drossmiller@bpmlaw.com
**Elissa M. Boyd, OSB No. 111679**
Email: eboyd@bpmlaw.com
Betts, Patterson & Mines, P.S.
111 SW 5th Avenue, Suite 3650
Portland, OR 97204
Telephone:     (503) 961-6338
Facsimile:     (503) 961-6339

*Attorneys for Plaintiff LRY, LLC*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

| | |
|---|---|
| **LRY, LLC dba LAKE RAILWAY**, an Oregon LLC,<br><br>                    Plaintiff,<br><br>vs.<br><br>**LAKE COUNTY**, a political subdivision of the State of Oregon<br><br>                    Defendant. | NO.  17-cv-00675<br><br>**COMPLAINT**<br><br>**(Breach of Contract, Unjust Enrichment, 42 U.S.C. § 1983 and Violation of the Due Process Provisions of the Fifth and Fourteenth Amendments, Declaratory Judgment and Injunctive Relief)**<br><br>**Jury Trial Requested** |

For its Complaint against defendant Lake County, Plaintiff LRY, LLC dba Lake Railway ("LRY") alleges as follows:

### PARTIES

1.     At all material times, LRY was a limited liability company duly organized and existing under the laws of Oregon and was engaged in interstate commerce. LRY operates a railroad in southern Oregon and northern California. LRY's principal place of business is in Lakeview, Oregon.

Page 1 – COMPLAINT

2. Lake County is a local government and subdivision of the State of Oregon, located in southern Oregon, with its county seat at Lakeview, Oregon.

## JURISDICTION AND VENUE

3. Jurisdiction is proper in the U.S. District Court for the District of Oregon because this matter presents questions of federal law, namely violations by Lake County of 42 U.S.C. § 1983 and the Due Process provisions of the Fifth and Fourteenth Amendments to the United States Constitution, as well as interference by Lake County with the jurisdiction of the United States Surface Transportation Board ("STB") and interstate railroad operations under the STB's oversight and authority. Pursuant to 28 U.S.C. § 1367, the U.S. District court has supplemental jurisdiction over state law claims presented.

4. Venue is proper in the U.S. District Court of Oregon, Medford Division, because both parties are residents of Lake County, and the dispute and events that are the subject of this Complaint took place in Lake County, which is within the Medford Division of the U.S. District Court of Oregon.

## COMMON ALLEGATIONS

5. LRY is a small railroad company that operates a local line between Lakeview, Oregon and Perez, California.

6. LRY's locomotives run on about 55 miles of railroad track in Oregon and California leased from Lake County.

7. The approximately 60 miles of remaining track utilized by LRY in northern California is leased by LRY from the Union Pacific Railroad Company.

8.  LRY's operation is important to the Lake County economy and services a local perlite mine and a lumber mill, hauling their products as well as agricultural products. In addition, LRY provides various railroad car storage services.

9.  The section of track in LRY's service area owned by Lake County is referred to as the Lakeview Branch. Upon information and belief, Lake County purchased the section of track when the Southern Pacific abandoned service in 1985 and the railroad was operated by Great Western Railroad, Lake County, and other operators prior to LRY commencing operation in May 2009.

10. The Lake County Lease and Operating Agreement between Lake County and LRY (the "Lease") was entered into on November 3, 2010.

11. The Lease provides that LRY has, in part, leased the following:

> **1.01** The County hereby grants to LRY the lease, use and occupancy of the premises including the right-of-way, tracks, rails, ties, ballast, all other track materials including loose materials on the premises, signals, switches, crossties, buildings, bridges, culverts, crossing devices, signs, communication equipment, as more specifically depicted in **Exhibit A** attached hereto and incorporated herein (hereinafter referred to as the "Leased Premises," "Premises," or "Property") for LRY's exclusive use and possession for the purpose of providing rail transportation operations and services as hereinafter described in this Lease Agreement.
>
> **1.02** LRY also leases the Depot and equipment associated with the operation of the Depot as specifically itemized in **Exhibit B**.

12. Despite the right to exclusive use and possession of the lands outlined in Paragraph 1.01 of the Lease, Lake County has, without the permission or input of LRY, constructed a County evidence building on the leased property.

13. In addition, upon information and belief, Lake County tore down a fence constructed and funded by LRY on the LRY leased property because a neighboring landowner

Page 3 – COMPLAINT

had complained that the fence was unsightly. The fence was torn down without the consent or input of LRY.

14. Further, upon information and belief, Lake County moved the property line around the leased property without LRY's consent or input in order to create a larger school bus parking lot for Lake County.

15. The Lease further provides:

> **5.07** The County and not LRY shall be responsible for the cost of all capital replacements, repairs or reconstruction necessitated by: (a) such natural disasters against which insurance is not normally available; and (b) non-routine maintenance of the structural integrity of the bridges and other infrastructure of the leased premises.
>
> **5.08** The County and not LRY shall be responsible for the cost of compliance with the FRA's Bridge Safety Standards set forth at 49 C.F.R. Part 237 and any rehabilitation, reconstruction, replacements or repairs required thereunder. LRY shall, upon written approval by the County of LRY's plans for such work, undertake to perform at the County's sole cost and expense such reconstruction, replacements, and repairs and such work as necessary to comply with the FRA's Bridge Safety Standards within a reasonable time after the need to do so arises. LRY may submit to the County invoices for such work on a progressive billing basis and the County shall pay each such invoice within thirty (30) days of receipt thereof.
>
> **5.09** Once this Lease Agreement has been fully executed, the County agrees to file a letter, substantially in the form of **Exhibit D** attached hereto, with the Regional Administrator of the FRA giving notice of the assignment of bridge safety inspection and maintenance responsibility for all bridges on the Line to LRY; said letter to be filed thirty (30) days before the expected Commencement Date.

16. On or about October 25, 2016, LRY began discussions with Lake County for repairing bridges in order to keep them operative and safe. LRY provided Lake County with plans for work necessary to comply with the Federal Railroad Administration's ("FRA") Bridge Safety Standards.

17. Based on requirements of FRA regulations, LRY has had to incur the cost of weekly bridge inspections at $800 per week and will continue to incur this cost until Lake County fulfills its obligations for bridge repair under the Lease, which will cost approximately $275,000 and should properly be funded by Lake County, not LRY.

18. Upon information and belief, Lake County told LRY that it was not responsible for the cost of bridge repairs despite the Lease language quoted above and despite Lake County's earlier admissions that they were responsible for the costs of the bridge repairs.

19. Some time ago, a wind storm blew the doors off the depot on the leased property.

20. LRY paid $14,220.27 to have the damage to the depot doors repaired.

21. On or about April 4, 2017 LRY sent an invoice to Lake County for the depot door repair in compliance with Paragraph 5.07 of the Lease.

22. Upon information and belief, Lake County denies that it is required to reimburse LRY for the repair of the depot doors.

23. The Lease also contains the following term:

> **18.02** Additions and improvements made by the County or pre-approved by County and made by LRY at the County's expense to the leased premises shall become the property of the County at the termination of this agreement.

24. The Lakeview Branch and its appurtenances were in extremely poor condition at the time LRY took control of the lands and LRY is unable to operate its trains faster than 10 MPH in most locations on the tracks in their current condition. In one location, the line is limited to 5 MPH due to sub-grade surface issues and the repair of these issues is the responsibility of Lake County. Because of the poor condition of the tracks, bridges and other elements of the leased railroad line, and because Lake County will not fund the repairs as they

are required under the lease, LRY has had to invest substantial amounts of its own money and taxpayer grant money to keep the line in condition to operate trains and to improve the line sufficiently to make it commercially viable.

25. The State of Oregon provides a lottery-backed bond initiative that, in part, invests in rail infrastructure to upgrade poor infrastructure and keep the rail lines running efficiently. The bond initiative is called *Connect*Oregon. Companies can apply to receive *Connect*Oregon grants to upgrade rail infrastructure and all grant money is provided with a requirement that the recipient pay a percentage of matching funds for the project.

26. LRY is working diligently to rehabilitate, upgrade and stabilize the infrastructure of the leased lands in part utilizing *Connect*Oregon funds. LRY invested substantial time and money to acquire four *Connect*Oregon grants that total more than $2 million in grant funds to better the leased premises. Each of the four *Connect*Oregon applications were made with the consent and support of Lake County and Lake County itself made the application presentation to the State of Oregon of the *Connect*Oregon VI grant proposal.

27. Based on a requirement of the *Connect*Oregon IV grant that the recipient of funds maintain and operate the funded improvements for 20 years, Amendment #1 to the Lease was added and it extended the Lease to run through December 31, 2035.

28. Each of the *Connect*Oregon grants requires a percentage of the payment be matched by the grant recipient as a requirement for funding. Based in part on the requirements of Paragraphs 5.07 and 18.02 of the Lease, it is Lake County's responsibility to pay the grant match for each of the *Connect*Oregon projects.

29. LRY and Lake County came to an agreement on the payment of the recipient match for two of the *Connect*Oregon projects and those funds are not at issue in this lawsuit.

30. Upon information and belief, Lake Railway denies it is responsible to pay the matching funds for the two remaining *Connect*Oregon projects, numbers V and VI.

31. LRY will pay or has paid over $300,000 of its own money to fund the grant matches for *Connect*Oregon V and VI.

32. The only parties to the *Connect*Oregon grant agreements are LRY and the State of Oregon through the Department of Transportation. There is no method in place for the work on the *Connect*Oregon projects to be completed if LRY were unable to complete the projects, as there is no second recipient of funds. According to the agreements, if the *Connect*Oregon projects are not completed, LRY would be required to pay back all of the grant funds it has received. Further, Lake County's actions may prevent LRY from fulfilling other obligations to the State of Oregon concerning these grants.

33. Upon information and belief, Lake County has harassed LRY and interrupted LRY's business by, under color of State law, directed Oregon Department of Transportation inspectors to perform inspections on LRY and then report back to Lake County, with the intention of disrupting and stopping LRY's operations during the days of the inspections, and with the intention of intimidating LRY's employees.

34. On December 18, 2009, the U.S. Surface Transportation Board ("STB") granted LRY an exemption to operate the Lakeview Branch pursuant to a lease with Lake County. The Exemption took effect January 1, 2010.

35. The STB is a decisionally-independent adjudicatory body organizationally housed within the U.S. Department of Transportation. The STB has broad economic regulatory

Page 7 – COMPLAINT

oversight of railroads, including jurisdiction over rates, service, the construction, acquisition and abandonment of rail lines, carrier mergers and interchange of traffic among carriers.

36. On April 12, 2017, Lake County sent LRY a letter purporting to terminate the Lease effective April 30, 2017. The notice admits that the termination is improper and without reasonable cause.[1]

37. The improper termination is purportedly based on the following Paragraph of the Lease:

> **13.05** In the event the County terminates this lease agreement **without reasonable cause**, including through condemnation of all or a sufficient portion of the leased premises to prevent service to one or more LRY customers, then, in that event, the County shall pay termination costs of twenty five thousand dollars ($25,000) to LRY as liquidated damages. (Emphasis added).

38. Even though Paragraph 13.05 provides no authority for terminating the Lease under any circumstances, and even though Lake County's reliance on this Paragraph is an admission that its actions are unreasonable and without cause, Lake County demanded in its termination letter that LRY aid it in transferring the common carrier obligations of LRY to a third party.

39. LRY is aware of no third party willing and able to take over its STB obligations.

40. The STB requires that the interstate railroads operate continually. The actions of Lake County would force a stoppage of interstate commerce until a new common carrier could be granted permission by the STB to run the railroad.

41. LRY has obligations to the STB that LRY would be forced to violate if Lake County's termination was effectuated. Upon information and belief, despite the STB's

---

[1] The County sent a letter on November 7, 2016 stating concerns to LRY but clearly stated that this letter "is not at this point declaring a breach or termination of the Agreement." Lake County has never asserted that the purported termination is for any valid reason under the Lease.

Page 8 – COMPLAINT

jurisdiction, Lake County's reasons for attempting to terminate the lease are based on Lake County's desire to control the rates charged by LRY to its shipping customers, which is outside Lake County's authority and falls under the purview of the STB.

42. In 2016 LRY secured the contractual rights to handling traffic for Red Rock Biofuels – this traffic is expected to return profits for LRY of approximately $400,000 a year.

43. Lake County's November 7, 2016 letter referenced in footnote 1 above, demanded a copy of LRY's contract with Red Rock, potentially to determine whether an improper termination and wrongful usurpation of LRY's rights to the Red Rock contract would be cost effective for Lake County should it regain control of the track.

44. LRY's shipping customers support the continuation of their agreements with LRY and do not support the purported termination by Lake County.

45. LRY has repeatedly informed Lake County that the shipping customers want rail service to continue and that LRY's rates are acceptable to the shipping customers.

46. Although there is no provision in the Lease to allow Lake County to have any control over LRY's business transactions, Lake County has repeatedly said that the only way Lake County will rescind the termination is if LRY negotiate a long term rate with LRY's shipping customers.

47. The termination of LRY's ability to operate the Lakeview Branch would also deny LRY the full benefit of its operation of the Union Pacific tracks in northern California, and would disrupt interstate commerce. Neither Lake County nor any third party has the right to operate on the Union Pacific tracks leased by LRY, and so another operator would have no authority to move cargo to its end destination, thus disrupting the local economy and interstate commerce.

48. LRY may have obligations under the *Connect*Oregon grant agreements that it would be forced to breach if the purported termination stands, potentially causing LRY to incur millions of dollars in liabilities to the State of Oregon. Additionally, Lake County would unjustly gain the advantage of the matching funds already expended by LRY, and LRY's property rights and future economic expectancy in the extended lease would be violated.

49. The attempted arbitrary termination of the Lease has disrupted LRY's workforce and employee relations in that employees cannot be certain from day to day whether the railroad will be operating, and thus some employees have left the company.

50. LRY has purchased large quantities of ballast (crushed rock used as a bed for railroad ties and tracks) and railroad ties to maintain and upgrade the tracks on the leased premises. If forced to vacate, LRY would be damaged by being forced to expend approximately $50,000 to transfer the materials already on the land off of the leased premises and will incur losses concerning railroad maintenance materials that have been purchased but not yet received. LRY has on site in Lake County some 3,000 railroad ties that are needed for urgent upgrade of the tracks on the leased premises, with 2,000 more ties that have already been purchased en route from Canada. In addition, 2,000 tons of ballast is on site and a rock crushing operator has already been scheduled to produce another 2,000 tons of ballast. The mobile rock crusher comes to Lake County just once a year, and the crushing contract cannot be cancelled.

### FIRST CLAIM FOR RELIEF
### Breach of Contract

51. Plaintiff incorporates all preceding paragraphs.

52. The Lease was entered into for good and valuable consideration.

53. Amendment #1 to the Lease that extended the lease term until 2035 was entered into in exchange for LRY's agreement to enter into the *Connect*Oregon IV agreement.

Page 10 – COMPLAINT

54. LRY has performed all of its obligations under the Lease and is not in breach of the Lease. No term of the Lease gives Lake County the ability to terminate the lease under the present circumstances and with very short notice. Paragraph 13.05 is not a termination provision but rather a liquidated damages provision in case of a breach by Lake County under unreasonable circumstances like condemnation of the leased premises.

55. Amendment #1 to the Lease renders Paragraph 13.05, as interpreted by Lake County, invalid and unenforceable because $25,000 is not an amount that is reasonable in light of the anticipated harm caused by the improper termination, the difficulties of proof of loss and the inconvenience or nonfeasibility of otherwise obtaining an adequate remedy.

56. Lake County acknowledged that its purported termination was a breach of contract and was unreasonable when claiming that the termination would trigger the liquidation clause of the Lease.

57. On information and belief, Lake County has breached the Lease in, at least, the following ways:

   a. By purporting to terminate the lease on an improper basis;

   b. By failing to reimburse LRY for a number of invoices Lake County owes pursuant to the Lease;

   c. By denying LRY the benefit of the Lease as amended by Amendment #1;

   d. By seizing the benefit of LRY's performance and improvements under the expectancy of the Lease; and

   e. By infringing on LRY's rights to exclusive use of the leased premises.

1133303.docx/042817 1825/8446-0005

58. LRY has been harmed by the breach of contract in an amount to be determined at trial but no less than $13 million.

## SECOND CLAIM FOR RELIEF
## Unjust Enrichment

59. Plaintiff incorporates all preceding paragraphs.

60. LRY conferred numerous benefits on Lake County including, but not limited to, obtaining, providing funding for and implementing the *Connect*Oregon grant projects that will better the leased premises (the funding for two of the four *Connect*Oregon grant projects is at issue in this lawsuit).

61. Lake County supported each of the applications for the *Connect*Oregon Grants and is aware that it has received the benefit of LRY's work and money.

62. It would be unjust to allow Lake County to retain the benefit of the *Connect*Oregon grant work that has already occurred without requiring Lake County to pay for that benefit.

## THIRD CLAIM FOR RELIEF
## Violation of 42 U.S.C. § 1983/Violation of the Due Process
## Provisions of the Fifth and Fourteenth Amendments/Violation of Equal Protection

63. Plaintiff incorporates all preceding paragraphs.

64. LRY has a protectable property interest in the Lease and leased premises, the *Connect*Oregon grant agreements and in the control of its business and pricing.

65. Lake County, acting under color of law and through custom or policy or the action of its Board of Commissioners, deprived LRY of its property interests and committed a taking of LRY's property for public use without just compensation in violation of 42 U.S.C. § 1983.

66. LRY was denied adequate procedural protections guaranteed by the Fifth and Fourteenth Amendments to the U.S. Constitutions when Lake County arbitrarily terminated the lease, built on the leased premises without consulting or compensating LRY, tore down LRY's fencing without consulting or compensating LRY, and interfered with LRY's obligations to the STB and the State of Oregon, among other reasons.

67. Lake County's actions constitute an illegal taking in violation of the Fifth Amendment and a denial of due process under the Fifth and Fourteenth Amendments, as well as a denial of equal protection under the Fourteenth Amendment.

68. As a result of Lake County's actions, LRY is entitled to receive compensatory damages for the losses incurred through the takings in an amount to be determined at trial but no less than $13 million, equitable relief including reinstatement of the Lease and compensation for the portion of the land covered by the lease that was taken for use by Lake County, and its reasonable attorney fees and costs pursuant to 42 U.S.C. § 1988.

### FOURTH CLAIM FOR RELIEF
### Declaratory Judgment

69. Plaintiff incorporates all preceding paragraphs.

70. An actual controversy exists between LRY and Lake County regarding whether Paragraph 13.05 of the Lease is a valid clause under which to terminate the Lease, whether the liquidated damages provision in that Paragraph is valid and enforceable, and whether Lake County is infringing on the jurisdiction and usurping the authority of the STB by attempting to determine the rail carrier on the Lakeview Branch and by attempting to regulate LRY's shipping rates.

71. Pursuant to 28 U.S.C. § 2201, LRY is entitled to a declaration by this Court of the proper interpretation of Paragraph 13.05 and whether the liquidated damages provision is valid and enforceable.

### FIFTH CLAIM FOR RELIEF
### Injunctive Relief

72. LRY has been irreparably harmed and continues to be irreparably harmed, and monetary damages alone would be inadequate to fully compensate LRY for the harm. Accordingly, LRY is entitled to temporary, preliminary and permanent injunctive relief restraining and enjoining Lake County from terminating the lease without just cause and based on an invalid liquidation clause.

WHEREFORE, Plaintiff is entitled to a temporary, preliminary, and permanent injunction enjoining Lake County from terminating the lease during the pendency of this lawsuit, along with damages in an amount to be proven at trial, as well as an award of attorney fees and costs incurred herein.

DATED this 28th day of April, 2017.

BETTS, PATTERSON & MINES, P.S.

By /s/David Rossmiller
**David P. Rossmiller, OSB No. 983395**
Email: drossmiller@bpmlaw.com
**Elissa M. Boyd, OSB No. 111679**
Email: eboyd@bpmlaw.com
Telephone: (503) 961-6338
Facsimile: (503) 961-6339

*Attorneys for Plaintiff LRY, LLC*