IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

| | |
|---|---|
| LRY, LLC dba LAKE RAILWAY,<br>an Oregon LLC, | Civ. No. 1:17-cv-00675-MC |
| Plaintiff, | **OPINION & ORDER** |
| v. | |
| LAKE COUNTY, a political subdivision<br>of the State of Oregon, | |
| Defendant. | |

McSHANE, District Judge.

This matter comes before the Court on Plaintiff LRY, LLC's Motion for Preliminary Injunction, filed April 28, 2017. ECF No. 2. LRY seeks to enjoin Defendant Lake County ("the County") from terminating LRY's lease pending final resolution of this matter on the merits. The Court heard oral argument on this motion on May 12, 2017. ECF No. 17. For the reasons discussed below, LRY's motion is DENIED.

## LEGAL STANDARDS

A preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22 (2008). A plaintiff seeking a preliminary injunction generally must show that: (1) the

plaintiff is likely to succeed on the merits; (2) the plaintiff is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in favor of the plaintiff; and (4) an injunction is in the public interest. *Id.* at 20.

The Supreme Court's decision in *Winter*, however, did not disturb the Ninth Circuit's alternative "serious questions" test. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-32 (9th Cir. 2011). Under this test, "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Id.* at 1132. Thus, a preliminary injunction may be granted "if there is a likelihood of irreparable injury to plaintiff; there are serious questions going to the merits; the balance of hardships tips sharply in favor of the plaintiff; and the injunction is in the public interest." *M.R. v. Dreyfus*, 697 F.3d 706, 725 (9th Cir. 2012). While a stronger showing of irreparable harm may offset a weaker showing of likelihood of success on the merits, a preliminary injunction is never appropriate upon a showing of a mere possibility of irreparable harm. *Winter*, 555 U.S. at 22.

## BACKGROUND

LRY operates a railroad service across portions of southern Oregon and northern California. Compl. ¶ 1. LRY leases approximately fifty-five miles of track from Lake County ("the Lakeview Branch"). Compl. ¶¶ 6, 9. LRY and the County entered into the Lake County Lease and Operating Agreement ("the Agreement") on November 3, 2010. Compl. ¶ 10. When LRY commenced operations, the line was in serious disrepair and LRY has made $700,000 in capital investments to triage the line. Didelius Decl. ¶¶ 7-8. LRY provides rail service to two clients: a perlite mine and a lumber mill. Didelius Decl. ¶ 5.

LRY has contracted with the State of Oregon through a grant program known as *Connect*Oregon for funds to improve and repair portions of the Lakeview Branch. Didelius Decl. ¶¶ 10-15. Under certain circumstances, violation of the *Connect*Oregon contract may obligate LRY to refund the grant money. *See, e.g.,* Didelius Decl. Ex. 4, at 15. As part of the *Connect*Oregon grant program, the County and LRY amended the Agreement to extend the lease through December 31, 2035. Didelius Decl. Ex. 2, at 20.

Section 13 of the Agreement governs termination of the lease. Didelius Decl. Ex. 2, at 8-9. Section 13.04 of the Agreement requires LRY to cooperate with the orderly transition of common carrier obligations to a third party in order to avoid disruption of rail service. Didelius Decl. Ex. 2, at 9. Section 13.05 provides:

> In the event the County terminates this lease agreement without reasonable cause, including through condemnation of all or a sufficient portion of the leased premises to prevent service to one or more LRY customers, then, in that event, the County shall pay termination costs of twenty five thousand dollars ($25,000) to LRY as liquidated damages.

Didelius Decl. Ex. 2, at 9.

On April 12, 2017, the County sent a letter to LRY announcing that the County was terminating the Agreement pursuant to Section 13.05 and that it expected that LRY would comply with its obligations under Section 13.04. Didelius Decl. Ex. 1. Based on the record, the termination was the result of an ongoing dispute over a number of issues, including LRY's rates and which party was responsible for repairs and improvements. There is no indication in the record of any third party prepared to take over operation of the Lakeview Branch and the County's briefing indicates that it expects LRY to continue operations, notwithstanding the termination of the Agreement, until a new carrier can be found.

On April 28, 2017, LRY filed the Complaint and a Motion for a Preliminary Injunction and Temporary Restraining Order. ECF Nos. 1, 2. On May 1, 2017, this Court granted a temporary restraining order maintaining the pre-termination *status quo* between the parties. ECF No. 8. On May 12, 2017, the Court heard oral argument on LRY's Motion for a Preliminary Injunction. ECF No. 17.

## DISCUSSION

At oral argument, LRY clarified that its motion for a preliminary injunction rests on its claim for breach of contract. Accordingly, the Court confines its analysis to that claim. LRY has not met its burden of clearly showing a likelihood of irreparable harm and is not entitled to a preliminary injunction.

### I. Arbitration

As a preliminary matter, the County asserts that the Agreement requires any dispute between the parties to be submitted to arbitration and that LRY's filing of this case in federal court constitutes a breach of the Agreement. Section 31 of the Agreement provides, in relevant part: "Any dispute arising out of this agreement under Federal law shall be submitted to arbitration under the Federal Arbitration Act and shall be brought in the United States District Court for the District of Oregon." Didelius Decl. Ex. 2, at 18.

On its face, Section 31 appears to permit (or possibly require) that any dispute be submitted to arbitration and this Court. At oral argument, both parties agreed that the language of Section 31 is ambiguous, although LRY contends that it offers the parties a choice between the forums, while the County argued that the clear intent was to require arbitration. Resolution of that issue is not, however, presently before the Court. Nor does the presence of a debatably enforceable arbitration clause divest this Court of authority to consider a motion for injunctive

relief. *See Toyo Tire Holdings of Am., Inc. v. Continental Tire N. Am., Inc.*, 609 F.3d 975, 981 (9th Cir. 2010).

## II. Success on the Merits

A court's decision on a motion for preliminary injunction is not a ruling on the merits. *See Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 944 (9th Cir. 2013).

LRY rests its motion for preliminary injunction on its claim for breach of contract. To state a claim for breach of contract under Oregon law, a "plaintiff must allege the existence of a contract, its relevant terms, plaintiff's full performance and lack of breach and defendant's breach resulting in harm to plaintiff." *Slover v. Or. State Bd. of Clinical Soc. Workers*, 144 Or. App. 565, 570 (1996) (internal quotation marks and citation omitted).

Resolution of this claim turns on the meaning of Section 13.05 of the Agreement. The County asserts that Section 13.05, by its plain terms, permits the County to terminate the lease without reasonable cause and incur only $25,000 in liquidated damages. LRY contends that the liquidated damages provision is unenforceable under Oregon law and that, by invoking Section 13.05, the County has explicitly affirmed that they have no reason or cause to terminate the Agreement.

The Court need not definitively resolve these conflicting interpretations at this stage of the case, but LRY has met its burden of showing serious questions going to the merits as required by *Cottrell*. LRY's showing on the merits is not, however, sufficiently strong to overcome the comparative weakness of its showing on the likelihood of irreparable harm, discussed below.

## III. Irreparable Harm

Although plaintiff is not required to show actual harm at the preliminary injunction stage, the plaintiff "must establish that irreparable harm is *likely*, not just possible[.]" *Cottrell*, 632 F.3d at 1131 (emphasis in original). The harm must be supported by a "clear showing." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). Speculative injuries are insufficient. *Goldie's Bookstore, Inc. v. Superior Court*, 739 F.2d 466, 472 (9th Cir. 1984).

It is well established that monetary injury is not normally considered "irreparable harm." *Los Angeles Mem'l Coliseum Comm'n v. NFL*, 634 F.2d 1197, 1202 (9th Cir. 1980) (citing *Sampson v. Murray*, 415 U.S. 61, 88 (1974)). The fact that adequate compensatory damages will be available in the ordinary course of litigation weighs heavily against a claim of "irreparable" harm. *Sampson*, 415 U.S. at 90; *see also Idaho v. Coeur d'Alene Tribe*, 794 F.3d 1039, 1046 (9th Cir. 2015) ("Purely economic harms are generally not irreparable, as money lost may be recovered later, in the ordinary course of litigation."). In this case, it appears that most, if not all, of the harm LRY will suffer in the absence of injunctive relief is monetary.

LRY's briefing and argument were vague as to potential non-economic harms, but it has suggested that it will suffer a loss of business goodwill, which can constitute an irreparable harm. *See, Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush and Co., Inc.*. 240 F.3d 832, 841 (9th Cir. 2001). "Although the loss of goodwill and reputation are important considerations in determining the existence of irreparable injury, there must be credible and admissible evidence that such damage threatens Plaintiff's businesses with termination." *Dotster, Inc. v. Internet Corp. for Assigned Names & Nos.*, 296 F. Supp.2d 1159, 1163-64 (C.D. Cal. 2003). Statements that are conclusory, speculative, or without sufficient factual support cannot sustain a finding of

irreparable harm to intangible assets like reputation or goodwill. *Am. Promotional Events, Inc.-Nw. v. City and Cnty. of Honolulu*, 796 F. Supp.2d 1261, 1283-84 (D. Haw. 2011).

In this case, the Court notes that LRY has only two customers and both have expressed dissatisfaction with LRY's service and they have made arrangements to carry their freight by truck due, at least in part, to LRY's surcharge policies. Broadfoot Decl., ECF No. 12-3; Addington Decl., ECF No. 12-2. On this record, the Court cannot conclude that LRY has clearly made out irreparable harm based on a loss of business goodwill.

LRY's arguments about the disruption of interstate commerce and the possibility that it may have to refund the *Connect*Oregon grants are speculative in light of the County's invocation of Section 13.04, which requires LRY to participate in transferring its obligations to a new carrier. Such speculative harms are insufficient to sustain a preliminary injunction.

On this record, LRY has failed to meet its burden of clearly showing that it will suffer irreparable harm in the absence of injunctive relief.

## IV. Balance of Equities

"In each case, courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24 (internal quotation marks and citation omitted).

LRY asserts that it will suffer serious economic harm if the Agreement is terminated, including losing the benefit of their capital investments and potentially having to repay the *Connect*Oregon grants. The County's briefing concedes that LRY will suffer economic harm if the Agreement is terminated, but argues that the balance of equites favors denying an injunction because LRY's injuries will be compensable by monetary damages. The Ninth Circuit has

observed, however, that "[e]conomic harm may indeed be a factor in considering the balance of equitable interests." *Earth Island Inst. v. Carlton*, 626 F.3d 462, 475 (9th Cir. 2010).

The County asserts that it will be harmed by an injunction requiring it to continue doing business with LRY. The Court notes, however, that after several years of doing business with LRY under the Agreement, the County opted to extend the lease through December 31, 2035. Didelius Decl. Ex. 2, at 20. The Court is not impressed with the County's argument that it will be harmed by a contract that it voluntarily extended for such a long period and concludes that the balance of the equities favors LRY. The balance of the equities does not, however, overcome LRY's inability to show a likelihood of irreparable harm.

## V. Public Interest

"In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24. "The public has an interest in enforcement of valid contracts to which the parties have voluntarily agreed." *Giftango, LLC v. Rosenberg*, 925 F. Supp.2d 1128, 1141 (D. Or. 2013). There are serious questions going to the merits of this contract dispute, however. The Court cannot conclude that an injunction is in the public interest, especially in the absence of a clear showing of a likelihood of irreparable harm.

## CONCLUSION

For the reasons set forth above, Plaintiff LRY, LLC's Motion for Preliminary Injunction, ECF No. 2, is DENIED. The temporary restraining order in this case is VACATED.

It is so ORDERED and DATED this __17th__ day of May, 2017.

s/ Michael J. McShane<br>
MICHAEL McSHANE<br>
United States District Judge