IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

| | |
|---|---|
| LRY, LLC; FR, LLC, | Civ. No. 1:17-cv-00675-MC |
|            Plaintiffs, | **OPINION & ORDER** |
|     v. | |
| LAKE COUNTY; BRUCE ADDINGTON; CORNERSTONE INDUSTRIAL MINERALS CORPORATION, U.S.A.; CLARK HILL PLC; JUDITH HEFFNER, as personal representative for the Estate of JOHN D. HEFFNER, | |
|            Defendants, | |
|     and | |
| CORNERSTONE INDUSTRIAL MINERALS CORPORATION, U.S.A.; BRUCE ADDINGTON, | |
|            Third-Party Plaintiffs, | |
|     v. | |
| JUDITH HEFFNER as personal representative for the Estate of JOHN D. HEFFNER, | |
|            Third-Party Defendant. | |

McSHANE, District Judge.

This matter comes before the Court on a Motion to Dismiss filed by Defendants John D. Heffner ("Heffner") and Clark Hill PLC ("Clark Hill"), ECF No. 142, and a Motion to Dismiss filed by Third-Party Defendant Heffner, ECF No. 148.[1]  The Court heard oral argument on the motions on September 20, 2019, at which time it DENIED the motions from the bench, finding that it had specific personal jurisdiction over both Heffner and Clark Hill.  This Opinion and Order memorializes the Court's reasoning.

## BACKGROUND

Plaintiff LRY, LLC ("LRY") is an Oregon limited liability company that operated a local railroad line connecting Lakeview, Oregon, and Perez, California.  Fifth Amended Complaint ("FAC") ¶¶ 1, 13-14.  ECF No. 140.  LRY's principal place of business was Lakeview, Oregon. *Id.* at ¶ 1.  As part of its operations, LRY leased approximately 55 miles of railway track from Defendant Lake County, Oregon ("the County").  *Id.* at ¶ 14.  The leased section of track was known as the Lakeview Branch and the agreement between LRY and the County was memorialized in the Lake County Lease and Operating Agreement (the "Lease"), which was signed by LRY and the County on November 3, 2010.  *Id.* at ¶¶ 17, 19.  After an extension, the Lease was set to run through December 31, 2035.  *Id.* at ¶ 34.

During the negotiation and drafting of the Lease, in 2009 and 2010, LRY was represented by attorneys John Savage ("Savage") and John D. Heffner ("Heffner").  FAC ¶ 56; Heffner Decl. ¶¶ 6-7.  ECF No. 149.  Heffner was admitted to practice law in Washington, D.C., but was not admitted to practice law in Oregon.  Heffner Decl. ¶ 2.  Heffner did not travel to Oregon during his time as LRY's attorney.  *Id.* at ¶ 7.  Heffner is referenced by name in the Lease as counsel for

---

[1] Defendant John D. Heffner filed the motion before passing away.  Defendant Judith Heffner, acting as personal representative for the Estate of John D. Heffner, has since been substituted in place of John Heffner.  For the sake of simplicity, the Court will refer to the motion as by John D. Heffner throughout this Opinion & Order.

LRY.  FAC ¶ 56.  Heffner also represented LRY before the United States Surface Transportation Board ("STB") in connection with the Lease and LRY's operations on the Lakeview Branch.  *Id.*  Plaintiffs allege that, in his capacity as LRY's attorney, Heffner obtained confidential information from LRY.  *Id.* at ¶ 165.

Savage has submitted a declaration, ECF No. 155, describing the work he and Heffner did for LRY in 2009 and 2010, which "involved matters falling under the jurisdiction of the [STB] as well as matters arising under the laws of the State of Oregon.".  Savage Decl. ¶ 5.  This included negotiating, "in LRY's behalf, both a rail Agency Agreement and later, a Rail Operating Lease, with the Lake County governing body—the Lake County Board of Commissioners ("Lake County")."  *Id.* at ¶ 6.  "These instruments, although relevant to the STB licensing proceeding, arise under Oregon law and heavily impact upon the County and its citizens as these multi-year agreements cover major transportation routes."  *Id.*  Savage affirmed that he was supervised by Heffner by "frequent and regular face to face, email, and telephone communication" with Heffner during their work on the LRY matter.  *Id.* at ¶ 8.  Savage also affirmed that Heffner was in "frequent and regular email and telephone communication," with LRY's officers.  *Id.* at 9.

The Lease itself directs that all notices required by the agreement be sent to Savage at the law offices of John D. Heffner, PLLC as counsel for LRY.  Rossmiller Decl. Ex. 3, at 17.  ECF No. 156-2.  Savage has affirmed that all attorney work product, including the legal files from Heffner and Savage's representation of LRY, remain in Heffner's possession, custody, and control.  Savage Decl. ¶ 4, n.1.

LRY served several industrial clients in Lake County, including Defendant Cornerstone Industrial Minerals Corporation, U.S.A., ("Cornerstone"), an Oregon corporation based in

Lakeview, Oregon.  FAC ¶¶ 5, 16.  Defendant Bruce Addington ("Addington") is a Florida resident and president of Cornerstone.  *Id.* at ¶¶ 4, 6.  Cornerstone and Addington were unsatisfied with LRY's operation of the Lakeview Branch.  Heffner Decl. ¶ 9.

In late 2016, Cornerstone and Addington sought to retain Heffner as attorney for Cornerstone for the purpose of removing LRY as the operator of the Lakeview Branch.  FAC ¶¶ 58-59; Heffner Decl. ¶ 9.  At this point, Heffner was employed by the law firm Strasburger & Price LLP ("Strasburger & Price").  Heffner Decl. ¶ 8; FAC ¶ 8.  In 2018, Strasburger & Price merged with Defendant Clark Hill PLC ("Clark Hill"), a Michigan-based law firm.  FAC ¶ 9.  Clark Hill has stipulated that it is the successor in interest to Strasburger & Price.  ECF No. 175.

Heffner told the firm about his past representation of LRY and the firm approved Heffner's representation of Cornerstone and Addington.  FAC ¶ 60.  In a Verified Statement submitted to the STB in June 2017, Heffner said:

> During the Fall of 2016, one of the two on-line shippers, Cornerstone Industrial Minerals, contacted me about rail service issue with [LRY].  I contacted our firm's ethics partner and we concluded that there was no conflict due to the substantial passage of time, as well as [LRY] not being a current client, and the fact that this work did not entail the railroad's STB authority or the lease, i.e., the matters were not substantially related.  I thereafter represented Cornerstone.

FAC ¶ 60.

Plaintiffs allege that Heffner's involvement in the drafting of the Lease was well-known. FAC ¶¶ 56-57.  Heffner did not inform LRY of his subsequent representation of Cornerstone and Addington and did not seek LRY's written consent for that representation.  *Id.* at ¶¶ 58-59.  LRY only learned of Heffner's involvement after the commencement of this case.  *Id.* at 59.

From the fall of 2016 through 2017, Heffner acted as counsel for Cornerstone and Addington and corresponded with the County on their behalf.  FAC ¶¶ 61-69.  In these communications, Heffner advised the County on how to breach the Lease with LRY.  *Id.* at ¶¶

66-67.  Heffner advised the County to hire railway inspectors, paid for by Cornerstone and Addington, to look for breaches of the Lease by LRY.  *Id.* at ¶¶ 62-65.  Heffner also advised the County's attorney on how ambiguities in the Lease could be interpreted to the detriment of LRY.  *Id.* at ¶ 66.

In an email sent April 6, 2017, Heffner advised the County attorney and the County Commissioners that LRY might be able to remedy the defects found by the inspectors.  FAC ¶ 67.  Heffner advised the County that the best way to proceed would be to terminate the Lease without cause by invoking the Lease's liquidated damages clause.  *Id.*  On April 12, 2017, the County sent LRY a letter terminating the Lease without cause, effective April 30, 2017.  *Id.*

Shortly after the termination of the Lease, Heffner, again acting on behalf of Cornerstone and Addington, advised the County's attorney that the County "has the ability to provide service in its own right so it could subcontract to Bruce [Addington] as of May 1, [2017].  That might simplify things."  FAC ¶ 69.

In May 2017, Heffner also began to represent the County directly as its attorney.  FAC ¶ 69.  This representation was against the interests of LRY and was undertaken without the knowledge or consent of LRY.  *Id.*

On June 22, 2017, Goose Lake Railway ("Goose Lake") submitted a proposal to take over operating the Lakeview Branch from LRY.  FAC ¶ 70.  Addington is the part-owner and president of Goose Lake.  *Id.* at 70-71.  The County ultimately selected Goose Lake to be LRY's successor as operator on the Lakeview Branch.  *Id.* at ¶ 71.

On August 28, 2019, the Court was notified that Heffner had passed away on July 29, 2019.  ECF No. 178.  Judith Heffner, as personal representative for Heffner's estate, has been substituted as the real party in interest.  ECF No. 257.

**DISCUSSION**

In its sprawling Fifth Amended Complaint, Plaintiffs bring claims for (1) breach of contract against the County, FAC ¶¶ 79-88; (2) unjust enrichment against the County, Cornerstone, and Addington, *Id.* at ¶¶ 89-93; (3) 42 U.S.C. § 1983 claims for violation of due process and equal protection rights against the County, Cornerstone, and Addington, *Id.* at ¶¶ 94-100; (4) declaratory judgment against the County, *Id.* at ¶¶ 101-103; (5) tortious interference with business relationships or expectations against the County, Addington, Cornerstone, and Heffner, *Id.* at ¶¶ 104-108; (6) tortious interference with contracts against the County, Addington, Cornerstone, and Heffner, *Id.* at ¶¶ 109-112; (7) tortious interference with economic relations against the County, Addington, Cornerstone, and Heffner, *Id.* at ¶¶ 113-118; (8) intentional interference with prospective economic advantage against the County, Addington, Cornerstone, and Heffner, *Id.* at ¶¶ 119-124; (9) defamation against Addington and Cornerstone, *Id.* at ¶¶ 125-129; (10) negligence against Addington and Cornerstone. *Id.* at ¶¶ 130-133; (11) tortious breach of the duty of good faith against the County, *Id.* at ¶¶ 134-138; (12) breach of the implied contractual duty of good faith against the County, *Id.* at ¶¶ 139-144; (13) breach of the fiduciary duty of loyalty against Heffner, *Id.* at ¶¶ 145-159; (14) breach of the fiduciary duty of confidentiality against Heffner, *Id.* at ¶¶ 160-172; (15) legal malpractice against Heffner, *Id.* at ¶¶ 173-177; (16) breach of contract against Heffner, *Id.* at ¶¶ 178-183; (17) negligent supervision against Clark Hill, *Id.* at ¶¶ 184-195; and vicarious liability claims against Clark Hill for (18) tortious interference with business relationships or expectations, *Id.* at ¶¶ 196-205; (19) tortious interference with contracts, *Id.* at ¶¶ 206-216; (20) tortious interference with economic relations, *Id.* at ¶¶ 217-227; (21) tortious interference with prospective economic advantage, *Id.* at ¶¶ 228-238; (22) breach of the fiduciary duty of loyalty, *Id.* at ¶¶ 239-262; (23) breach of the fiduciary

duty of confidentiality, *Id.* at ¶¶ 263-288; and (24) legal malpractice, *Id.* at ¶¶ 289-305. Finally, Plaintiffs bring a claim (25) for punitive damages against all Defendants. *Id.* at ¶¶ 306-310.

Cornerstone and Addington bring third-party claims against Heffner for (1) breach of fiduciary duty and (2) legal malpractice for Heffner's failure to seek LRY's consent before commencing his representation of Cornerstone and Addington. Answer & Third-Party Compl. ¶¶ 321-342. ECF No. 144.

Heffner and Clark Hill move to dismiss Plaintiffs' claims against them for lack of personal jurisdiction. Heffner separately moves to dismiss Cornerstone and Addington's third-party complaint on the same basis.

A motion to dismiss for lack of personal jurisdiction is governed by Federal Rule of Civil Procedure 12(b)(2). "In opposition to a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper." *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). "When personal jurisdiction is challenged by motion as an initial response, and the district court determines that it will receive only affidavits or affidavits plus discovery materials, these very limitations dictate that a plaintiff must make only a prima facie showing of jurisdictional facts through the submitted materials in order to avoid a defendant's motion to dismiss." *Myers v. Bennett Law Offices*, 238 F.3d 1068, 1071 (9th Cir. 2001) (internal quotation marks and citation omitted, alterations normalized). "Uncontroverted allegations in the plaintiff's complaint must be taken as true," and "[c]onflicts between the parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Boschetto*, 539 F.3d at 1015 (internal quotation marks and citation omitted).

"When no federal statute governs personal jurisdiction, the district court applies the law of the forum state." *Boschetto*, 539 F.3d at 1015. Oregon's long-arm statute creates a standard

co-extensive with federal jurisdictional standards, Or. R. Civ. P. 4L, so a federal court sitting in the District of Oregon may exercise personal jurisdiction whenever it is possible to so within the limits of federal constitutional due process.  *See, e.g., Gray & Co. v. Firstenburg Mach. Co., Inc.*, 913 F.2d 758, 760 (9th Cir. 1990).

Federal due process jurisprudence requires that, to be subject to the personal jurisdiction of a federal court, a nonresident defendant must have at lease "minimum contacts" with the relevant forum such that "the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'"  *Schwarzeneggar v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004) (quoting *Int'l Show Co. v. Washington*, 326 U.S. 310, 316 (1945)).  Two forms of personal jurisdiction are available for application to a nonresident defendant: general personal jurisdiction and specific personal jurisdiction.

## I.    General Personal Jurisdiction

"For general jurisdiction to exist over a nonresident defendant . . ., the defendant must engage in continuous and systemic general business contacts . . . that approximate physical presence in the forum state."  *Schwarzeneggar*, 374 F.3d at 801 (internal quotation marks and citation omitted).  "This is an exacting standard, at it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world."  *Id.*

In this case, Plaintiffs argue that, in addition to representing LRY, Cornerstone, and the County at various times, Heffner has also represented at least one other Oregon rail company in STB proceedings.  For Clark Hill, Plaintiffs argue that the firm employs at least one attorney licensed to practice law in Oregon and that Clark Hill attorneys have appeared in a handful of Oregon cases.  General personal jurisdiction is an exacting standard, however, and neither

Heffner nor Clark Hill have Oregon contacts that can reasonably be described as continuous or systemic such that they approximate physical presence. The Court concludes that there is no general personal jurisdiction in Oregon over either Heffner or Clark Hill.

## II. Specific Personal Jurisdiction

The courts of the Ninth Circuit apply a three-pronged test for determining whether, in connection with a given claim, the exercise of specific personal jurisdiction over a nonresident defendant could be proper:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) The claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) The exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

*Schwarzeneggar*, 374 F.3d at 802,

The plaintiff bears the burden of satisfying the first two prongs of the test, whereupon the burden shifts to the defendant to "'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Burger King Corp. v. Rudzevicz*, 471 U.S. 462, 476-78 (1985).

### A. Heffner

Heffner was a Virginia resident who practiced law in Washington D.C. Heffner Decl. ¶ 2. He was admitted to the D.C. bar and was not admitted to practice in any other jurisdiction.

*Id.* Heffner affirmed that he does not live or work in Oregon and does not advertise in Oregon. *Id.* He only traveled to Oregon once, to attend a conference in the 1980s. *Id.* at ¶ 4.

Relevant to this case, Heffner was retained to assist in setting up LRY's operation of the Lakeview Branch in 2009 to 2010. Heffner Decl. ¶ 6-7. Heffner and his associate, James Savage, worked from their offices in D.C. and never traveled to Oregon. *Id.* at ¶ 7. Heffner communicated with Paul Didelius, the head of FR and LRY, by phone, letter, and email. *Id.* When Heffner joined Strasburger & Price in October 2011, his representation of LRY had concluded. *Id.* at ¶ 8.

Heffner had previously worked for Addington in connection with a rail issue in Colorado. Heffner Decl. ¶ 9. Addington approached Heffner in the fall of 2016 about Cornerstone's problems with LRY and the operation of the Lakeview Branch. *Id.* Heffner affirmed that "Cornerstone engaged me to represent Cornerstone with respect to LRY's poor rail service and in anticipated litigation before the STB in Washington, D.C." *Id.* In the course of representing Addington and Cornerstone, Heffner worked entirely from D.C. and never traveled to Oregon. *Id.* Although Cornerstone is based in Oregon, Addington lived in Kentucky during the relevant period and Heffner's invoices were paid from Kentucky. *Id.*; FAC ¶ 5.

In May 2017, Heffner also began to represent the County directly as its attorney. FAC ¶ 69.

### 1. Purposeful Availment

In the context of claims that sound primarily in contract, the Ninth Circuit applies a "purposeful availment" analysis to determine whether a defendant has "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits

and protections of its laws,"[2] *Schwarzeneggar*, 374 F.3d at 802 (internal quotation marks and citation omitted). A showing that the defendant purposefully availed itself of the privilege of conducting activities in the forum state "typically consists of evidence of the defendant's actions in the forum," such as "executing or performing a contract there" or conducting other business within the state. *Id.* "Purposeful availment analysis examines whether the defendant's contacts with the forum are attributable to his own actions or are solely the actions of the plaintiff." *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1195 (9th Cir. 1988).

The formation of a contract with a non-resident defendant is not, standing alone, sufficient to create jurisdiction. *Boschetto*, 539 F.3d at 1017. "To have purposefully availed itself of the privilege of doing business in the forum, a defendant must have performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state." *Id.* at 1016 (internal quotation marks and citation omitted). The "evaluation of the jurisdictional significance of a defendant's contract or other business in the forum is not rigid and formalistic, but rather practical and pragmatic." *Id.* Courts must look to "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing to determine if the defendant's contacts are *substantial* and not merely random, fortuitous, or attenuated." *Sher v. Johnson*, 911 F.3d 1357, 1362 (9th Cir. 1990) (internal quotation marks and citation omitted).

In the present case, Heffner successively represented multiple parties in Oregon regarding the operation of the Lakeview Branch, at least some of whose interests appear to have been materially adverse to one another. With respect to LRY, Heffner was retained negotiate and

---

[2] Heffner and Clark Hill argue that all of Plaintiffs' claims against them stem from a contractual relationship and so only the purposeful availment inquiry should apply. *See Sher v. Johnson*, 911 F.2d 1357, 1362 (9th Cir. 1990) ("Although some of Sher's claims sound in tort, all arise out of Sher's contractual relationship with the defendants," and applying the purposeful availment analysis). The Court concludes that it is has specific personal jurisdiction under both purposeful availment and purposeful direction and so both inquiries are discussed in this opinion.

prepare a contract with the County on behalf of LRY for the use of the Lakeview Branch. The Lease identified Heffner as counsel for LRY. As an attorney, Heffner was also under a continuing professional and ethical obligation to keep his LRY's confidences and not to represent parties materially adverse to LRY's interests in the matter for which he had represented LRY. Heffner subsequently undertook to represent Cornerstone and Addington in their efforts to replace LRY as the carrier on the Lakeview Branch.

Heffner and Clark Hill cite *Sher v. Johnson*, 911 F.2d 1357 (9th Cir. 1990), for the premise that the representation of a client by an out-of-state lawyer does not create jurisdiction in the client's home forum. In that case, the Shers were resident of California who traveled to Florida to retain a Florida law firm to defend Mr. Sher against federal criminal charges in Florida. *Id.* at 1360. The retainer agreement with the Florida firm was secured by deed of trust and a promissory note against the Shers' home in California. *Id.* Although one of the Florida attorneys traveled to California on three occasions, the representation was undertaken primarily in Florida. *Id.* Sher was convicted, but his conviction was subsequently overturned based in part on misconduct by his Florida attorney and the Shers sued the Florida attorneys individually and as a partnership in a California federal court, alleging legal malpractice. *Id.*

The Ninth Circuit found that the fact that the fact of the contract did not, by itself, establish purposeful availment. *Sher*, 911 F.2d at 1362. The Shers came to Florida to retain the firm and the contract contemplated legal services to be performed in Florida. *Id.* "Out-of-state legal representation does not establish purposeful availment of the privilege of conducting activities in the forum state, where the law firm is solicited in its home state and takes no affirmative action to promote business within the forum state." *Id.* This is not, however, the end of the inquiry. *Id.* As noted, courts look to "prior negotiations and contemplated future

consequences, along with the terms of the contract and the parties' actual course of dealing to determine if the defendant's contacts are *substantial* and not merely random, fortuitous, or attenuated." *Id.*

Viewed practically and pragmatically, it is impossible to conclude that Heffner's contacts with Oregon, as they relate to the Lakeview Branch, were random, fortuitous, or attenuated. As discussed above, Heffner's conduct involved the successive representation of multiple Oregon clients on the *same matter*. It is also significant that the matter in question was the right to operate a rail line located in Oregon and owned by an Oregon county.

The Florida attorneys in *Sher* were hired by California residents to provide legal services in Florida. In the present case, by contrast, Heffner was hired to conduct transactions in Oregon, first between LRY and the County in 2009-2010, and then, in 2016, on behalf of Cornerstone and Addington in arranging for LRY's removal as the operator of the Lakeview Branch. This involved extensive communication and coordination between Heffner, acting on behalf of Cornerstone and Addington, and the County. The Fifth Amended Complaint alleges that this coordination included the hiring, at Heffner's suggestion, of a third-party consulting firm to carry out an inspection of the Lakeview Branch in an effort to find breaches of the Lease by LRY. FAC ¶¶ 62-63. Heffner directly advised the County about how the Lease might be interpreted to the detriment of LRY and eventually advised the County to terminate the Lease without cause. FAC ¶¶ 66-67. Heffner is also alleged to have lobbied the County to subcontract operation of the Lakeview Branch to Addington following LRY's removal. FAC ¶ 69.

This is clear affirmative conduct promoting the transaction of business in Oregon, notwithstanding the fact that Heffner never physically traveled to Oregon. The Court concludes that Heffner purposefully availed himself of the privilege of conducting activities in Oregon.

**2. Purposeful Direction**

In the context of claims that sound primarily in tort, the courts employ an "effects" test derived from *Calder v. Jones*, 465 U.S. 783, 789 (1984), which "requires that the defendant allegedly have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002).

In applying the *Calder* effects test, the court are required to "look to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden v. Fiore*, 571 U.S. 277, 285 (2014). That is, the out-of-state defendant's relationship with the forum state "must arise out of contact that the defendant *himself* creates with the forum State." *Id.* at 284. And the defendant's link with the forum state cannot be based solely on the defendant's conduct directed toward the plaintiff, notwithstanding that the plaintiff is a forum-state resident, or otherwise solely on the plaintiff's own contacts with the forum state. *Id.* at 285-86. "Thus, a mere injury to a forum resident is not a sufficient connection to the forum . . . [r]ather, an injury is jurisdictionally relevant only insofar as it showed that the defendant has formed a contact with the forum State." *Picot v. Weston*, 780 F.3d 1206, 1214 (9th Cir. 2015) (internal quotation marks and citation omitted).

"The proper focus of the 'minimum contacts' inquiry in intentional-tort cases is the relationship among the defendant, the forum, and the litigation." *Walden*, 571 U.S. at 291 (internal quotation marks and citation omitted). "And it is the defendant, not the plaintiff or third parties, who must create contacts with the forum State." *Id.*

In this case, there is no doubt that Heffner committed an intentional act when he undertook to represent first LRY and then later Cornerstone and Addington in connection to the

Lakeview Branch. This required Heffner to deal directly with Lake County, a political subdivision of the State of Oregon, on behalf of his clients, whether in negotiating the Lease on behalf of LRY or arranging for LRY's removal on behalf of Cornerstone and Addington. The allegations concerning Heffner's conduct goes far beyond merely providing out-of-state legal advice and are based on Heffner's own conduct, which created continuing obligations and relationships between Heffner, the County, and Heffner's successive clients. This also caused harm felt, by LRY at the very least, in Oregon. The Court concludes that Plaintiffs have established purposeful direction as to Heffner.

### 3. Arising Out of Forum-Related Activities

The second prong of the three-pronged minimum contacts test for specific personal jurisdiction requires that the plaintiff's claim arise out of the nonresident defendant's forum-related activities. *See, e.g., Boschetto*, 539 F.3d at 1016. A plaintiff must show that it would not have suffered an injury "but for" the defendant's forum-related conduct. *Myers*, 238 F.3d at 1075.

In this case, Plaintiffs are suing Heffner for his own actions—for malpractice, tortious interference, and breach of fiduciary duties—and those claims arise directly out of Heffner's prior representation of LRY and his subsequent actions undertaken on behalf of Cornerstone and Addington. Heffner's forum-related actions are unquestionably the but-for cause of LRY's injuries.

### 4. Reasonableness

At the third prong of the specific jurisdiction test, the burden shifts to the defendant to present a "compelling case" to rebut the presumption that the exercise of specific personal jurisdiction would be reasonable. *Schwarzeneggar*, 375 at 802. In determining the

reasonableness, the courts of the Ninth Circuit examine seven factors: (1) the extent of the defendant's purposeful interjection into the forum state's affairs, (2) the burden on the defendant to defend the suit in the chosen forum, (3) the extent of conflict with the sovereignty of the defendant's state, (4) the forum state's interest in the dispute, (5) the most efficient forum for judicial resolution of the dispute, (6) the importance of the chosen forum to the plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum. *Myers*, 238 F.3d at 1075. "None of the factors is dispositive in itself; instead we must balance all seven." *Id.* (internal quotation marks and citation omitted).

In this case, the extent of Heffner's personal interjection in Oregon is, as previous discussed, considerable and this factor weighs in favor of Plaintiffs. Heffner argues that it would not be reasonable to require the personal representative of his estate to defend this action in Oregon when the personal representative lives in the D.C. area. Defending the estate in legal actions is, however, one of the functions of a personal representative. As the Ninth Circuit has observed, "modern advances in communications and transportation have significantly reduced the burden of litigating in another forum." *Freestream Aircraft (Bermuda) Ltd. v. Aero Law Group*, 905 F.3d 597, 608 (9th Cir. 2018) (internal quotation marks and citation omitted, alterations normalized). The Court concludes that this factor weighs in favor of Plaintiffs as well.

Heffner argues that D.C. has an interest in misconduct by attorneys licensed by the D.C. bar and, while this is undoubtably true, Oregon has "an interest in torts allegedly committed within its borders (namely, preventing them)." *Freestream*, 905 F.4d at 608. The Court concludes that Oregon's interest in the matter outweighs any interest by Virginia or Washington, D.C.

With respect to judicial efficiency, this factor "depends primarily on where the witnesses and the evidence are likely to be located." *Freestream*, 905 F.3d at 609 (internal quotation marks and citation omitted). However, "this factor is no longer weighted heavily given the modern advances in communication and transportation." *Id.* In this case, the witnesses and evidence will be found across multiple fora, although several witnesses are in the D.C. area. The Court concludes that this factor weighs slightly in Heffner's favor.

Plaintiffs argue that it would be unreasonable to require them to "chase" Heffner and Clark Hill across the country, rather than litigating the harm to an Oregon company in Oregon. This is a persuasive argument, as is the extensive time and effort already invested by all parties in the ongoing Oregon case. The Court finds that the importance of Oregon to Plaintiff's interest in convenient and effective relief weighs in favor of Plaintiffs, but notes that courts "generally do not give [this factor] much weight." *Freestream*, 905 F.3d at 609.

With respect the existence of alternative forums, Plaintiffs implicitly concede that D.C. would have jurisdiction over Heffner and Clark Hill. This factor therefore weighs in Heffner's favor.

After considering and weighing the relevant factors, the Court concludes that Heffner has not met his burden of showing that the exercise of jurisdiction would not be reasonable. The Court therefore concludes that it has specific personal jurisdiction over Heffner with regard to Plaintiffs' claims against him.

## B. Clark Hill

Clark Hill moves to dismiss Plaintiffs' claims for lack of personal jurisdiction. As previously noted, Clark Hill is the successor in interest to Strasburger & Price, which employed Heffner at the time he represented Cornerstone, Addington, and eventually the County.

For purposes of general jurisdiction, Plaintiffs have presented evidence that Clark Hill employs at least one attorney who is licensed to practice law in Oregon. Plaintiffs contend that Clark Hill, or attorneys working for the firm, have appeared or been named in a handful of state and federal cases in Oregon. The Court has reviewed these submissions and conclude that these contacts are not continuous or systemic and cannot, therefore, sustain general personal jurisdiction.

For specific personal jurisdiction, Plaintiff's claims against Clark Hill are largely based on their employment of Heffner as an attorney and agent of the firm. "For purposes of personal jurisdiction, the actions of an agent are attributable to the principal." *Myers*, 238 F.3d at 1073 (quoting *Sher*, 911 F.2d at 1362). In this case, Clark Hill does not dispute that Heffner was its agent, or the agent of its predecessor, Strasburger & Price, at the time of the challenged acts and that, if Heffner is subject to personal jurisdiction, the Court will also have jurisdiction over Clark Hill. Def. Reply 22 n.10. ECF No. 169. Accordingly, the Court determines that it has specific personal jurisdiction over Clark Hill for the same reason it has jurisdiction over Heffner.

### III.   Third-Party Claims

Cornerstone and Addington have brought third-party claims against Heffner. Cornerstone and Addington allege that Heffner was aware that their interests were adverse to those of his previous client, LRY, and that Heffner breached his fiduciary duty by failing to obtain LRY's consent before undertaking to represent Cornerstone and Addington. Cornerstone and Addington also allege that Heffner's failure to secure consent from LRY prior to undertaking and continuing to represent Cornerstone and Addington constituted legal malpractice. Heffner has separately moved to dismiss Cornerstone and Addington's third-party claims against him for lack of personal jurisdiction.

Cornerstone is an Oregon company with its principal place of business in Lakeview, Oregon. Addington is a Florida resident, but he lived in Kentucky for much of the relevant period.

As with Plaintiffs' claims, the Court concludes that the exercise of general personal jurisdiction over Heffner would be improper. As to specific personal jurisdiction Heffner relies on the holding of *Sher*, 911 F.2d 1357 (9th Cir. 1990), discussed above. As with Plaintiffs' claims, however, *Sher* is distinguishable. *Sher* involved California clients hiring a Florida law firm to represent them in Florida. The present case involves an Oregon company, Cornerstone, and its Florida/Kentucky-based president, hiring a D.C. attorney to negotiate with an Oregon county to induce that county to remove LRY, another Oregon company, from the operation of the Lakeview Branch. Heffner is also alleged to have arranged for LRY's replacement as operator of the Lakeview Branch with the Addington-owned Goose Lake. The agreement between the parties, as alleged in the Fifth Amended Complaint, contemplated close coordination and cooperation between Lake County and Cornerstone and Addington, to be negotiated and facilitated by Heffner. That is reflected in their subsequent course of dealing. The Court concludes that this constitutes purposeful availment.

Cornerstone and Addington's claims also arise out of Heffner's prior Oregon contacts, particularly his prior relationship of the Oregon-based LRY, and his failure to obtain LRY's consent to Heffner's subsequent representation of Cornerstone and Addington. For the same reasons discussed in the previous section, the Court concludes that the exercise of personal jurisdiction over Heffner is reasonable. The Court concludes that it has specific personal jurisdiction over Heffner. Heffner's motion to dismiss the third-party complaint is therefore DENIED.

## CONCLUSION

Defendants John Heffner's and Clark Hill's Motion to Dismiss, ECF No. 142, is DENIED. Defendant John Heffner's Motion to Dismiss the Third-Party Complaint, ECF No. 148, is DENIED.

It is so ORDERED and DATED this 14th day of May, 2020.

*s/Michael J. McShane*
MICHAEL McSHANE
United States District Judge